# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MICHAEL D. RODGERS,  )
        Plaintiff,  )
        )
v.  )    Case No. CIV-12-106-FHS
        )
MICHAEL J. ASTRUE,  )
Commissioner of Social  )
Security Administration,  )
        Defendant.  )

## REPORT AND RECOMMENDATION

Plaintiff Michael D. Rodgers (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 16, 1983 and was 27 years old at the time of the ALJ's decision. Claimant obtained his GED. Claimant has worked in the past as a construction contractor, roof and tree trimmer, rock stacker, and pipe controller. Claimant

alleges an inability to work beginning December 4, 2008 due to limitations resulting from pain in the knees, back, head, shoulders, and arms. Claimant also contends he suffers from bipolar disorder and borderline personality disorder.

**Procedural History**

On August 16, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On February 10, 2011, an administrative hearing was held before ALJ Michael Kirkpatrick by video with Claimant appearing in Fort Smith, Arkansas and the ALJ located in McAlester, Oklahoma. On February 28, 2011, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on January 5, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual

functional capacity ("RFC") to perform a full range of light work with some limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) omitting severe impairments at step two; (2) failing to assess Claimant's RFC properly; and (3) improperly applying the grids.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairment of mild disk protrusions at the T7-8 and T8-9 vertebral levels of the thoracic spine, verified by CT scan. (Tr. 16). Claimant contends the ALJ should also have found he suffered from the severe mental impairment of major depressive disorder, severe, with psychosis, intermittent explosive disorder, and polysubstance abuse.

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity

5

determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve

or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

Claimant's first apparent treatment for a mental condition occurred on June 1, 2009 when he presented to the Carl Albert Community Mental Health Center. He reported mood swings, outbursts, anger problems, sleep problems, and racing thoughts. Claimant also demonstrated anxiety where "people made me nervous." Dr. S. Nagumalli diagnosed Claimant with major depressive disorder, severe, with psychosis, generalized anxiety disorder, rule out social anxiety. (Tr. 287). Claimant was prescribed medication. (Tr. 291).

On August 17, 2009, Claimant again reported to Dr. Nagumalli. She noted his mood was "edgy," his affect "interactive," he was paranoid but cooperative. She diagnosed Claimant with major depressive disorder, severe with psychosis, generalized anxiety disorder, rule out social anxiety. Dr. Nagumalli modified Claimant's medication. (Tr. 286).

On October 12, 2009, Dr. Nagumalli found Claimant to be anxious and noted he was positive for paranoia with auditory and

visual hallucinations. Claimant reported racing thoughts, sleep problems, anxiety, and stated he felt trapped. Dr. Nagumalli diagnosed Claimant with major depressive disorder with psychotic features, intermittent explosive disorder, alcohol and cannabis abuse, and anti-social personality disorder. Modifications to Claimant's medications was again effected. (Tr. 285).

On December 28, 2009, Claimant was again attended by Dr. Nagumalli. She found Claimant to be causal, cleanly dressed, cooperative, but with a blunted/absent affect. Claimant's speech was normal to age/intellect. He experienced hallucinations and was paranoid (not much). She found Claimant's medication to be "partially effective." Dr. Nagumalli diagnosed Claimant with major depressive disorder, severe with psychotic features, intermittent explosive disorders, nicotine, cannabis, and alcohol dependence, anti-social personality. (Tr. 307).

On March 29, 2010, Claimant reported to Dr. Nagumalli that he went to Redrock as he had a bad day with suicidal ideations. Claimant had decreased sleep 2-3 hours per night, was stressed, and had drank a 12 pack of beer and a pint of alcohol. He dressed casually, was cooperative, but had a blunted/absent affect. His mood was tired, his speech was slurred/stammered, and his thoughts were normal. Dr. Nagumalli's diagnosis remained the same and modifications to Claimant's medication continued.

On July 22, 2010, Claimant reported he was tired, irritable,

8

not sleeping and experiencing nightmares. Dr. Nagumalli found Claimant was appropriately groomed, casual, cooperative and interacted appropriately. His affect was blunted/absent, depressed/sad, and irritable. His mood was labile and tired. His speech was considered coherent and his thoughts were oriented and organized. Claimant's mind was racing despite no pressure of speech. Dr. Nagumalli changed Claimant's medicine regimen as she believed Cymbalta may have been driving Claimant's mania. (Tr. 309).

On August 23, 2010, Claimant's symptoms were aggravated by the last change in medicine to Lexapro. Claimant was depressed and was still having nightmares. Further adjustments to Claimant's medicine were implemented. (Tr. 310).

Similar problems were noted in visits on November 22, 2010 and March 7, 2011. (Tr. 311, 34).

On May 2, 2011, Claimant underwent a consultative mental health evaluation by Dr. Patricia J. Walz. Dr. Walz found Claimant to be "a bit flamboyant and gregarious." His mood was irritable, his affect was consistent with his mood. Claimant's speech was clear and intelligible, his thought processes were logical and goal oriented. Claimant's thought content was notable for history of multiple suicide attempts with reported daily suicidal thinking. Dr. Walz diagnosed Claimant with probable bipolar II disorder, intermittent explosive disorder, history of alcohol abuse, in

9

remission by report, antisocial and narcissistic personality traits. Dr. Walz estimated Claimant's GAF at 45-50 based upon suicidal ideation. Dr. Walz noted Claimant's attention and concentration were impaired. His social skills were impaired by his irritability and narcissistic attitude. (Tr. 35-41).

Dr. Walz also completed a Residual Functional Capacity Secondary to Mental Impairments form on Claimant. Numerous functional areas were considered "extreme" or "severe" in their impairment. Several other areas were considered "marked" in impairment. (Tr. 42-44).

With regard to Claimant's mental impairments, the ALJ determined Claimant's conditions "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are, therefore, nonsevere." (Tr. 17). The ALJ simply ignored the extensive medical record with supports substantial limitations in Claimant's ability to engage in work activities. Dr. Walz's report alone is sufficient for a finding of a severe mental impairment. His condition has not be controlled with medication and he continues to experience significant depression and mental limitations. On remand, the ALJ shall re-evaluate the medical record with regard to Claimant's mental conditions and set forth with specificity the basis for his findings.

**RFC Determination**

Because the ALJ failed to properly evaluate the medical evidence at step two, his RFC analysis is necessarily flawed. The ALJ shall reconsider his RFC findings on remand.

## Application of the Grids

Claimant contends the failure to properly consider his mental impairments precluded the application of the grids to his case. Claimant asserts the presence of non-exertional impairments prevented the ALJ from applying the grids. In order to help evaluate the step five requirement, whether or not there are sufficient jobs in the economy that the claimant can perform given his or her age, education, and work experience, the Social Security Administration has created Medical-Vocational Guidelines, also known as "the grids." See 20 C.F.R. § 404.1567; 20 C.F.R. Pt. 404, Subpt. P, App. 2; Trimiar v. Sullivan, 966 F.2d 1326, 1332 (10th Cir. 1992). Five degrees of residual functional capacity are outlined in the grids by general exertional level-sedentary, light, medium, heavy, and very heavy exertion. 20 C.F.R. § 404.1569a; Trimiar, 966 F.2d at 1332 n. 22. Residual functional capacity reflects "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). If the ALJ finds that a claimant's exertional capacity, education, age, and skills fit precisely within the criteria of a particular grid level, the ALJ may conclude the claimant is not

disabled. Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The Grids, however, may not be used where a claimant has nonexertional impairments which further limit the range of jobs he can do but, rather, the Grids may only be used as a guideline in evaluating the case. Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

Non-exertional limitations affect a claimant's ability to meet the demands of jobs that do not involve strength. 20 C.F.R. § 404.1569a(a). Examples cited include "(1) difficulty functioning because you are nervous, anxious, or depressed; (2) difficulty with maintaining attention or concentration; (3) difficulty understanding or remembering detailed instructions; (4) difficulty seeing or hearing; (5) difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; (6) difficulty with manipulative or postural functions such as reaching, handling, stooping, climbing, or crawling." 20 C.F.R. § 404.1569a(c).

Clearly, if the ALJ had properly considered Claimant's mental impairments, application of the grids would have been inappropriate. On remand, the ALJ shall reconsider the use of the grids after properly considering the totality of Claimant's impairments.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 22nd day of October, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE